NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DONKIN'S INN, INC., Respondent.

No. 74-3252.

United States Court of Appeals,
Ninth Circuit.

March 4, 1976.

Rehearing Denied April 28, 1976.

Edmund Cooke, Atty. (argued), NLRB, Washington, D. C., for petitioner.

Robert S. Rose (argued), of Harris & Aranda, Marina Del Rey, Cal., for respondent.

OPINION

Before CHAMBERS, TRASK and WALLACE, Circuit Judges.

TRASK, Circuit Judge:

This is an application for Enforcement of an Order of the NLRB, issued on October 9, 1974, against Donkin's Inn, Inc.[1] (hereafter, "the Company") for certain violations of sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§. 151 et seq.[2] The order is reported at 214 NLRB No. 6. The unfair labor practices took place in Marina Del Rey, California, where the Company operates a restaurant business engaged in commerce within the meaning of sections 2(6) and 2(7) of the National Labor Relations Act. This court therefore has jurisdiction by virtue of those sections and section 10(e) of the Act.

From 1965 to 1973, the Company had been a party to the Bay Area Agreement, a comprehensive collective bargaining agreement between the Union and the Bay Area Association, a multi-employer bargaining unit. In 1973, a petition was filed seeking to decertify the Union as the collective bargaining representative of the Company's employees. The Union in response filed a section 8(a)(5) charge against the Company, alleging unlawful refusal to bargain. The NLRB's regional office determined that the Company had illegally sponsored the decertification petition. The petition was therefore dismissed, an unfair labor practice complaint was issued against the Company, and a hearing on that complaint was set for September 11, 1973.

During the course of that hearing, a "settlement" of sorts was reached between Union attorney Potts and Mr. E. Day Carman, an attorney representing the Company at the hearing. This settlement was executed by the parties, including Carman as attorney for the Company. Under this settlement agreement the Company among other things agreed to refrain from taking part in decertification proceedings, to bargain with the Union upon request and if agreement was reached, to embody that agreement in a signed document.

During the settlement discussions between Carman and Potts on the contract, the only difference which appeared to separate the parties was concern that certain language in the contract, a standardized Bay Area Association contract, was no longer applicable to the Company, which had previously withdrawn from the Association. The Union offered to substitute an independent contract, containing roughly the same provisions but without the particularized language. Carman agreed to this. He told the Union to send him three copies and he would have the employer sign them.

These copies were sent to Carman on October 10, and a followup letter requesting

---

1. We have been advised that in the within proceedings, respondent has been variously referred to as Donkin's Inn and Donkin's Inn, Inc. The true and correct corporate name of respondent is Donkin's.

2. Section 8(a)(1) of the National Labor Relations Act provides:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7."

Section 8(a)(5) of the same Act provides:

"(a) It shall be an unfair labor practice for an employer—

"(5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 9(a)."

return of two signed copies was sent to Carman on October 30. Carman replied on November 5, apologizing for the delay and stating that he expected to have the copies signed shortly. The following day, November 6, he telephoned Potts and posed questions concerning certain provisions of the contract. In response to a question by Potts, Carman said he was not backing down from his agreement to sign but was rather simply seeking clarification of certain items in the contract for the benefit of his client.

Finally, on January 8, 1974, a meeting was scheduled between Potts and Carman, at which time Carman informed Potts that he had received instructions from his client that very day not to sign the agreement because it contained a union security clause. The Union in response filed an unfair labor practice charge against the Company.

Hearing on the Union's complaint was set for March 12, 1974. The Company requested a postponement of this hearing because of the illness of its president at that time. A postponement until April 3, 1974, was granted, with the specification that "no further postponements will be granted." The April date was in large part determined by a statement from the physician of the Company's president that it would be "sometime in the early part of April before [he would] be able to resume the responsibilities [of his] business."

On March 6, 1974, meanwhile, the Company retained new counsel to represent them in this matter. Gigliotti, Carman's successor, waited until at least March 15 before attempting to contact Carman to discuss this case with him. He was not able to reach Carman until March 29, at which time Carman told Gigliotti that he would be unable to appear at the April 3 hearing, due to prior legal commitments. Gigliotti then filed a motion on April 1 for another continuance, on the ground of absence of a material witness. The motion was denied.

Thereafter, Gigliotti renewed his motion at the April 3 hearing, arguing again that an essential witness, Carman, was unavailable and further that he had not had sufficient time to adequately prepare his case. When this motion was denied, Gigliotti, stating that he was operating upon instructions from his client, left the proceedings. The proceedings on April 3, then, took place without counsel for the company present. It was on the basis of the findings at this hearing that the order for which enforcement is here requested was issued.

The Trial Examiner found that the discussion of November 6, 1973, where Carman denied that he was backing down on his agreement to sign "completed the cycle of offer, constructive counteroffer and acceptance." At that point, he found, an "agreement" within the meaning of section 8(d) of the Act was "reached," thereby creating a duty to execute the written contract. He found that Carman's capacity and authority to bind the Company was "prominent and continuous" during the entire time in question. The Trial Examiner placed much emphasis upon the similarity between the controverted contract and the contract that had previously existed between these parties. He held that the demand to renegotiate the issue of union security was an independent section 8(a)(5) violation.

He therefore recommended an order requiring that the contract be signed and given retroactive effect to August 1, 1973. He further recommended that employees of the bargaining unit be made whole for any monetary losses suffered within that period.

The three-member panel of the NLRB considered and rejected the Company's contention that the Trial Examiner's refusal to grant a continuance of the April 3 hearing was an abuse of discretion or that it violated their due process rights. The Board accepted the Trial Examiner's findings of fact, conclusions of law and adopted the recommended Order, for which enforcement in this court is now requested.

Two main issues are now presented to this court for review: (a) is the evidence sufficient to support the Board's finding that the Company violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act? and, (b) did the Trial Examiner abuse his discretion by refusing to grant the Com-

pany a continuance of the April 3, 1974, hearing?

■ In appellate review of NLRB fact-finding, the applicable standard is that first enunciated in *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490–91, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and reiterated in this circuit many times: whether there is substantial evidence in the record as a whole which will support the Board's decision. *NLRB v. Tragniew, Inc.*, 470 F.2d 669, 674 (9th Cir. 1972).

■ The Board contends, and the Company denies, that Carman was an agent authorized to "accept" a contract on behalf of the Company. Issues regarding agency are generally treated as fact issues. *NLRB v. International Brotherhood of Boilermakers*, 321 F.2d 807, 810 (8th Cir. 1963). The Board also contends that even if Carman was not vested with actual powers of agency to accept the contract, he was vested with apparent agency authority.

■ Apparent authority, while a term admitting of some confusion, has been defined in the 2nd Restatement of the Law of Agency, § 8, as:

".  .  . the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."

This court in *Hawaiian Paradise Park Corp. v. Friendly Broadcast Co.*, 414 F.2d 750 (9th Cir. 1969), discussed further the principle of apparent authority.

"Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have .  .  . [Citations omitted] In determining whether there was apparent authority, the factual inquiry is the same as in the case of actual implied authority, except that the principal's manifestations to the third person are substituted in place of those to the agent. Restatement of Agency (Second), § 8, at 31.

"The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." 414 F.2d at 756.

Here, the evidence was substantial and convincing that Carman was vested with at least apparent agency authority, if not actual agency authority, to enter into an understanding that would be embodied into a written agreement and signed. He had in fact done just this in connection with the settlement dispute.

Assuming that Carman was vested with authority to accept a contract, the Company argues that his acts in this instance were not sufficient to constitute an acceptance of an offered contract. There are several cases which indicate that the traditional laws of contract govern the offer and acceptance of labor agreements. *E. g., Teamsters, Chauffeurs, Warehousemen & Helpers Local 524 v. Billington*, 402 F.2d 510, 512 n.2 (9th Cir. 1968); *F. W. Means & Co. v. NLRB*, 377 F.2d 683, 686 (7th Cir. 1967).

■ In the context of labor disputes, and particularly section 8(a)(5) violations, however, the technical question of whether a contract was accepted in the traditional sense is perhaps less vital than it otherwise would be. Rather, a more crucial inquiry is whether the two sides have reached an "agreement," even though that "agreement" might fall short of the technical requirements of an accepted contract. Judge Duniway stated for this court in *Lozano Enterprises v. NLRB*, 327 F.2d 814, 818 (9th Cir. 1964):

"We do not think that, in deciding whether, under a particular set of circumstances, an employer and a union have in fact arrived at an agreement that the employer is then obliged to embody in a written contract upon the union's request, the

Board is strictly bound by the technical rules of contract law."

*Accord, San Antonio Machine & Supply Corp. v. NLRB,* 363 F.2d 633, 636 (5th Cir. 1966).

■ Moreover, the Supreme Court has held that the refusal of an employer to sign a contract embodying agreed upon terms is evidence of a refusal to bargain collectively in good faith .and thus can constitute a section 8(a)(5) violation. *NLRB v. Strong,* 393 U.S. 357, 359, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); *H. J. Heinz v. National Labor Relations Board,* 311 U.S. 514, 523–26, 61 S.Ct. 320, 85 L.Ed. 309 (1941). Such a refusal is often held to be violative of the specific language of section 8(d) of the Labor Act, defining collective bargaining as, *inter alia,* the "execution of a written contract incorporating any agreement reached if requested by either party." *See Lozano Enterprises v. NLRB, supra,* at 819; *NLRB v. International Furniture Co.,* 212 F.2d 431 (5th Cir. 1954).

■ Applying these standards to this case, we agree with the Board that the Company violated section 8(a)(5) and (1) of the Act by refusing to execute the contract agreed upon. The record as a whole clearly and convincingly supports the Board's conclusion on this question.

■ The Company's contention that the failure to grant a continuance of the hearing scheduled for April 3 was an abuse of discretion is not persuasive either. The hearing had already been set for March 12, 1974, and was rescheduled because of the illness of the president of the Company. At the Company's request it was reset on March 7 for April 3, with the admonition that "[n]o further postponements will be granted." The order that the hearing should proceed without the presence of Carman does not constitute an abuse of discretion. The Company had from March 12 until April 3 to assure itself that Carman could be present or to depose him. No effort was apparently made to have Romer, the Company president, testify although he

was "in the Los Angeles area" on the day of the hearing.

The order of the Board will be enforced.