THE CITY OF BURBANK, Appellant, v. ILLINOIS STATE LABOR RE-
LATIONS BOARD *et al.*, Appellees.

First District (4th Division)   No. 1—87—0061

Opinion filed June 29, 1989.

Robert E. Mann and Gretchen A. Winter, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Jacqueline A. Kinnaman, of AFSCME Council 31, of Chicago, for respondent American Federation of State, County & Municipal Employees, AFL-CIO.

JUSTICE JOHNSON delivered the opinion of the court:

The City of Burbank (hereinafter the City) appeals from the decision and order of the Illinois State Labor Relations Board (hereinafter the Board), finding that it had committed unfair labor practices in violation of sections 10(a)(1) through (a)(4) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1) though (a)(4)) (hereinafter the Act). The City also appeals from the Board's decision awarding attorney fees to the Board and to American Federation of State, County and Municipal Employees (hereinafter AFSCME). The following issues are raised on appeal: (1) whether the Board's decision is against the manifest weight of the evidence and (2) whether the Board has the authority to award attorney fees.

We affirm in part and reverse in part.

On June 28, 1985, AFSCME Council 31, AFL-CIO (hereinafter the Union) was elected as the exclusive representative of a group of employees of the Public Works Department (hereinafter Department) located in Burbank, Illinois. Before the Union was certified by the Board, but after the election, the City enacted an ordinance restructuring the Department. The ordinance eliminated the foremen positions, reduced the receptionist position from full-time to part-time status, and created a deputy director position, whereby one of the foremen was promoted and the remaining foreman was terminated. On August 6, 1985, the Union filed an unfair labor practice charge with the Board (No. S—CA—89), alleging that the City's action violated sections 10(a)(1), (a)(2), and (a)(4) of the Act. Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(2), (a)(4).

In September 1985, the City accepted a bid from an independent contractor to pave and resurface its streets. This work was previously performed by the Department employees. However, as a consequence of this subcontracting, four employees were laid off. On October 24, 1985, the Union filed another unfair labor practice claim (No. S—CA—103) against the City, alleging that its act of subcontracting violated sections 10(a)(1) and 10(a)(4) of the Act. Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(4).

After the Union filed its second charge with the Board, the parties entered into settlement negotiations. Michael Newman, a Union representative, testified that during October 1985 he met several times with Nick A. Cetwinski, attorney for the City, to discuss settle-

ment of the two pending unfair labor practice charges. On November 5, 1985, Newman again met with Cetwinski. Also present at this meeting were five members of the city council, the City's mayor and administrator, and Leonard Sullivan, one of the employees laid off by the City and a member of the Union's negotiating committee.

With respect to No. S—CA—89, the City proposed to return the receptionist position to a full-time status with back pay. However, in lieu of reinstating Bob Randle, the ex-foreman, the City offered him severance pay calculated at one-half of the salary he would have earned from the date of his termination less any other compensation earned since the date.

Concerning No. S—CA—103, the City proposed to reinstate the four laid-off employees with back pay less other compensation earned during the layoff. The proposal also provided that subcontracting of unit work was to be discussed at the parties' collective bargaining negotiations. Finally, the City's proposal required the Union to withdraw its unfair labor practice charges.

The Union found the proposal acceptable except for the provisions granting Randle severance pay in lieu of reinstatement. Newman agreed to recommend to the Union members that the City's proposal be accepted. The Union would then be obligated to withdraw its unfair labor practice charges. It was further agreed that the provision concerning Randle would be left for resolution by the Board. However, Newman informed the City that he could not authorize any settlement without the approval of the Union members. Thereafter, the City representatives signed the proposal as originally written, but the Union did not sign the document.

On November 6, 1985, Newman presented the proposal to the Union. The members voted to accept the settlement. On November 20, 1985, prior to the hearing in No. S—CA—89, Cetwinski met with Jacqueline A. Kinnaman, counsel for the Union (Newman was unavailable), to sign the agreement. At this meeting they amended the proposal signed by the City representatives on November 5 to make it consistent with their final agreement to eliminate all references in the proposal to Randle. Also, they agreed to either withdraw or amend the pending unfair labor practice claim. The amendments were initialled by Cetwinski and Kinnaman. In order to encompass what was agreed upon, the parties signed a document entitled "Parties Settlement Agreement."

At the hearing, both settlement agreements were entered into the record. Pursuant to the terms of the agreement, Kinnaman moved to amend the complaint in No. S—CA—89 to strike all references to the

receptionist and to the foreman who was promoted to deputy director. On December 13, 1985, Kinnaman notified the Board by letter that it was withdrawing its unfair labor practice charge in No. S—CA—103. On December 18, 1985, the Board notified all parties of the withdrawal.

The City reinstated the employees in December 1985; however, they did not receive any back pay. The Union sent a letter to Cetwinski requesting payment of the back wages, but it did not get any response. Accordingly, on March 10, 1986, the Union filed an unfair labor practice charge (No. S—CA—151) against the City alleging violations of sections 10(a)(1), (a)(2), and (a)(4) of the Act. Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(2), (a)(4).

Subsequent to the filing of the charge, the City initiated its process of subcontracting Department services by approving a budget ordinance, including $300,000 for subcontracting street repairs. Based on this action, the Union amended No. S—CA—151 on March 24, 1986, to allege a violation of section 10(a)(3) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(3).) On March 28, 1986, Kinnaman sent a letter to the City demanding to bargain over the decision to subcontract and its effect on the Union. The record does not reveal whether Kinnaman received a response; however, no bargaining occurred on the issue.

Upon investigation of the charge, as amended, the Board issued a complaint on May 9, 1986. A hearing was held on June 9, 1986. The hearing officer made the following recommendations to the Board:

"1. The City has violated Sections [10(a)(1) through (a)(4)] of the Act by entering into a settlement agreement in bad faith.

2. The City has violated Sections [10(a)(1) through (a)(3)] of the Act by refusing to pay back pay to employees Carol Budds, Kevin Miller, Jim Burris, Dan Jacobson and Len Sullivan as required by its settlement agreement.

3. The City has violated Sections 10(a)(1) and 10(a)(4) of the Act by failing to notify and bargain with AFSCME over the decision to subcontract bargaining unit work or the effects of that decision.

4. The appropriate remedy requires the City to pay [the above] employees back pay from the date of their layoff to the date of their reinstatement with interest calculated at 6% per annum, from [November] 20, 1986, the date of the settlement agreement.

5. The appropriate remedy also requires the City to bargain with AFSCME over any decision to subcontract street repairs.

6. The appropriate remedy also requires the City to pay to AFSCME all litigation expenses and attorneys fees incurred in the investigation, preparation, presentation and conduct of this case."

On December 16, 1986, the Board adopted the recommended decision of the hearing officer. One Board member dissented on the award of attorney fees. The City filed a petition for review by this court on January 1, 1987.

The City's first contention is that the Board's decision, that the City committed unfair labor practices by failing to abide by its settlement agreement, is against the manifest weight of the evidence. The City makes two arguments under this contention. Its first argument is that no settlement agreement existed between it and the Union. Secondly, it argues that if we find a settlement agreement did exist, such an agreement is void.

■■ Pursuant to section 3—110 of the Administrative Review Law, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (Ill. Rev. Stat. 1985, ch. 110, par. 3—110), and must be affirmed unless they are against the manifest weight of the evidence. In order to determine whether a finding is against the manifest weight of the evidence, it must be established that an opposite conclusion is clearly evident. (*Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 291.) Accordingly, it is not the function of the reviewing court to reweigh the evidence or judge its probative value; rather, its function is only to determine whether the agency's decision is supported by the evidence. *Caldbeck v. Chicago Park District* (1981), 97 Ill. App. 3d 452, 458.

Concerning the City's first contention, it argues that under general contract principles the Union did not accept the terms of the November 5 proposal. First, the Union objected to the term providing for severance pay to the ex-foreman, and secondly, the Union did not accept the term requiring it to withdraw the unfair labor practice charge No. S—CA—89. Therefore, the City claims the document entitled "Parties Settlement Agreement" was a counteroffer not accepted by the City. The City also claims Cetwinski lacked the authority to enter into an agreement on behalf of the City.

■■ There is authority which holds that "traditional laws of contract govern the offer and acceptance of labor agreements." (*National Labor Relations Board v. Donkin's Inn, Inc.* (9th Cir. 1976), 532 F.2d 138, 141, *cert. denied* (1976), 429 U.S. 895, 50 L. Ed. 2d 179, 97 S. Ct. 257.) In order to form a contract, there must be an of-

fer and an acceptance, and the acceptance must strictly comply with the terms set forth in the offer. (*Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799.) An acceptance conditioned on the modification of terms constitutes a rejection of the original offer and becomes a counteroffer that the original offeror must accept before a valid contract is established. *Loeb*, 131 Ill. App. 3d at 799; *Ebert v. Dr. Scholls Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 558.

"In the context of labor disputes, *** the technical question of whether a contract was accepted in the traditional sense is perhaps less vital than it otherwise would be. Rather a more crucial inquiry is whether the two sides have reached an 'agreement,' even though that 'agreement' might fall short of the technical requirements of an accepted contract." *Donkin's Inn, Inc.*, 532 F.2d at 141.

■ Initially, we must address City attorney Cetwinski's authority to enter into a final agreement on behalf of the City. The existence of an agency relationship, its nature and extent, may be determined from circumstantial evidence, with reference to the situation of the parties, their acts and other relevant circumstances. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23.) "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have ***." *National Labor Relations Board v. Donkin's Inn, Inc.* (9th Cir. 1976), 532 F.2d 138, 141.

■ The record reveals that Cetwinski filed an appearance on behalf of the City and responded to the unfair labor practice charges in both No. S—CA—89 and No. S—CA—103. He was also present at the November 5 meeting with the mayor, aldermen, and the Union representatives where the initial settlement terms were proposed. Thereafter, he and Newman met several times to further negotiate the settlement. Finally, Cetwinski, on November 20, initialed the changes proposed by the Union and signed the other agreement. These acts evidence at least apparent authority, if not actual authority.

Even if Cetwinski exceeded his authority by signing the document, the record reveals that the City ratified the agreement. "Ratification occurs upon the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority; and the consequences are the same as if the acts ratified had been authorized in the beginning." (*Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 866.) The principal can ratify the actions of his agent by not repudiating such acts once he has knowledge of them or by accepting the benefits of those acts. There is no evidence in the record that the City took any steps to repudiate Cetwinski for signing

the agreement.

More importantly, the City's knowledge of the agreement is clearly evident from its compliance with the terms of the agreement. It reinstated the particular employees and accepted their documentation regarding unemployment compensation during the pendency of the charges as required by the agreement. Further, the City was aware that the Union had withdrawn its charge in No. S—CA—103 and had amended its charge in No. S—CA—89. It is for these reasons the Union properly believed it had entered into a binding settlement agreement with the City. However, the City failed to comply with the terms of the settlement agreement, which is the basis of the Board's finding that it violated the Act.

Given the fact that Cetwinski did have the authority to enter into the agreement on behalf of the City, we must find that a binding agreement existed between the parties.

The City further argues that even if there had been an agreement between the parties, it is not bound by the agreement because it is null and void. It claims that the agreement is void since it was not approved by a majority vote of the city council as required by the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 3—11—17). The City also claims that the agreement is void because it did not appropriate any funds to cover the backpay obligation. It cites section 8—1—7 of the Code, which provides:

> "No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7.)

The record shows that the parties stipulated that the settlement was entered into without a prior appropriation of funds to cover the backpay obligation. For this reason, the City argues, the agreement is null and void.

Pursuant to section 6 of article VII of the Illinois Constitution, the City of Burbank is a home rule unit. A home rule unit may supersede a statutory provision, such as the Code, enacted prior to the effective date of the Illinois Constitution. Accordingly, the Illinois Supreme Court has held that home rule units are not bound by the

requirements of the Illinois Municipal Code. (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95, *reh'g denied* (1976), 429 U.S. 988, 50 L. Ed. 2d 600, 97 S. Ct. 511; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, 53-54.) Thus, the City may exercise its home rule authority by approving the settlement agreement without a majority vote of the city council or entering into a contract without prior appropriation.

■ Nevertheless, the Board found, and we agree, that the City had the opportunity to cure the appropriation deficiency by appropriating the necessary funds on March 26, 1986, when it passed its 1986 appropriation ordinance. The City's failure to pass such an ordinance, subsequent to accepting all the benefits of the settlement agreement, evidences its bad faith in entering into the agreement.

Section 10(a) of the Act provides:

"It shall be an unfair labor practice for an employer or its agents:

(1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act or to dominate or interfere with the formation, existence or administration of any labor organization ***;

(2) to discriminate in regard to hire or tenure of employment *** in order to encourage or discourage membership in or other support for any labor organization. ***;

(3) to discharge or otherwise discriminate against a public employee because he has signed or filed an affidavit, petition or charge or provided any information or testimony under this Act; or

(4) to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit, including, but not limited to, the discussing of grievances with the exclusive representative; ***." (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1) through (a)(4).)

We find that the breach of the settlement agreement or the bad-faith negotiation of the settlement agreement by the City constitutes a violation of sections 10(a)(1) and 10(a)(4) of the Act. We also find that the City's refusal to comply with the settlement agreement violates sections 10(a)(2) and 10(a)(3) of the Act. Hence, the Board's decision that the City committed unfair labor practices is not against the manifest weight of the evidence.

■ The City next contends that the Board improperly awarded

attorney fees. It argues that the Act does not provide for the award of such fees as a remedy for a violation of the Act.

The Board found that the City had engaged in frivolous litigation and thereby forced the Union to spend considerable time and money in this case. The Board stated that merely forcing the City to comply with the agreement would not put the Union in the position it would have been absent the unfair labor practice charge, *i.e.*, make it whole. Therefore, the Board concluded that in order to maintain the integrity of the administrative process and to make the Union whole, it must affirm the hearing officer's award of reasonable attorney fees.

The Board does not cite, neither do we find, any authority granting the Board authority to award attorney fees. The hearing officer originally reviewed the Act's legislative history for a source of authority; however, he failed to find a basis for awarding fees. He, therefore, relied on the only two National Labor Relations Board cases authorizing the award. The Board states that its power to award attorney fees is derived from section 11(c) of the Act, which provides in relevant part:

> "If, upon a preponderance of the evidence taken, the Board is of the opinion that any person named in the charge has engaged in or is engaging in an unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served upon the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action, including reinstatement of public employees with or without back pay, as will effectuate the policies of this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1611(c).)

The Board also cites several cases from other States for its interpretation of this remedial provision. Specifically, the Board cites to a Florida case, *Firefighters of Boca Raton v. City of Boca Raton*, 12 Pub. Employee Rep. (Fla.) par. 17205 (1986). However, unlike section 11(c) of the Act, Florida's statute expressly authorizes attorney fee awards to be assessed against the nonprevailing party. Fla. Stat. Ann. §760.10(13) (West 1986).

We must find that the Pennsylvania decision cited by the dissenting Board member is more akin to the present case. The Pennsylvania statute states, in pertinent part, that "the board *** shall *** issue *** an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action, including reinstatement of employees *** with or without back pay, as will effectuate the policies of the act." (Pa. Stat. Ann. tit. 43, §211.8(c) (Purdon 1964).) The Pennsylvania Board specifically held

that the above provision was remedial and not punitive. *Pennsylvania Department of Education*, 15 Pub. Employee Rep. (Pa.) par. 15206, at 472 (Pennsylvania Employee Relations Board 1984).

The Act and rules promulgated thereunder grant the party charged the right to participate in proceedings conducted by the Board. (Ill. Rev. Stat. 1985, ch. 48, par. 1611(a); 80 Ill. Adm. Code §1220.20—60 (1986).) Thus, we find that section 11(c) of the Act does not authorize the Board to award attorney fees.

For the foregoing reasons, the decision of the Board with respect to its finding that the City committed unfair labor practices in violation of the Act is affirmed, and its award of attorney fees is reversed.

Affirmed in part and reversed in part.

McMORROW and LINN, JJ., concur.