THE CITY OF BELLEVILLE, Plaintiff-Appellee, v. ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Defendant-Appellant.

Fifth District   No. 5—99—0416

Opinion filed March 28, 2000.

John R. Roche, Jr., of Illinois Fraternal Order of Police Labor Council, of Western Springs, for appellant.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

The City of Belleville, Illinois (City), brought suit seeking to void an addendum to its police-employee collective bargaining agreement. The addendum was allegedly entered into between the City's former mayor and the Illinois Fraternal Order of Police Labor Council (Union). The Union appeals from a summary judgment entered in the City's favor. We affirm.

The Union and the City entered into the collective bargaining agreement for the period of May 1, 1996, through April 30, 1999. This agreement was approved by the city council. On April 10, 1997, the former mayor, allegedly on behalf of the City, agreed to enter into a side letter to the collective bargaining agreement (addendum). It stated:

> "It is the understanding of the parties[ ] that the $1.00 per hour for 125 days of unused sick leave benefit at retirement and five weeks of vacation during the final work year has [*sic*] been negotiated away in favor of the after twenty-year longevity step.
>
> If[,] for some reason in the future, the longevity step is excluded from the collective bargaining agreement, for any reason, the original benefits shall be reinstated."

The former mayor signed this addendum eight days after he was defeated for reelection and 20 days before his last day of office. He neglected to submit it to the city council for approval. There was no appropriation of funds to cover the City's increased financial burden under the addendum.

Shortly thereafter, the city treasurer discovered the addendum, wrote the Illinois Department of Insurance, and inquired into the addendum's legality. On April 28, 1997, the Illinois Department of Insurance informed the treasurer that the addendum's provisions were illegal under the pension code. The city treasurer then notified the Union that the City was not going to honor it.

On October 5, 1998, the City filed suit against the Union, seeking

declaratory relief. On June 7, 1999, the trial court ruled in favor of the City on cross-motions for summary judgment.

A summary judgment should be granted when there are no genuine issues of material fact to be tried and the movant is entitled to a judgment as a matter of law. See *Batson v. Pinckneyville Elementary School District No. 50*, 294 Ill. App. 3d 832, 834, 690 N.E.2d 1077, 1078 (1998). In determining the appropriateness of a summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. See *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). On appeal, we review summary judgment orders *de novo*. See *Batson*, 294 Ill. App. 3d at 834, 690 N.E.2d at 1079.

■ Only corporate authorities have the power to bind the city in a contract unless that power is delegated to another. See *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill. App. 3d 638, 643, 516 N.E.2d 880, 884 (1987). The general rule is that when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such a contract is utterly void. See *D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill. App. 3d 60, 63, 492 N.E.2d 1000, 1002 (1986). One who deals with a municipal corporation is presumed to know the extent of its power to contract. See *D.C. Consulting Engineers, Inc.*, 143 Ill. App. 3d at 63, 492 N.E.2d at 1002.

■ Two provisions of the Illinois Municipal Code (the Code) (65 ILCS 5/1—1—1 *et seq.* (West 1994)) come into play. Section 8—1—7(a) provides:

"Except as provided otherwise in this Section, no contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." 65 ILCS 5/8—1—7(a) (West 1994).

In addition, section 3.1—40—40 of the Code provides that the passage of any ordinance or resolution to create liability against a city for the expenditure or appropriation of its money requires the approval of a majority of all members holding office on the city council. 65 ILCS 5/3.1—40—40 (West 1994).

The record shows that the addendum was entered into without a

prior appropriation of funds to cover the obligations incurred under it. It further shows that the addendum did not have the city council's approval. We think it clear that the addendum is void.

The Union contends that its side letter with the former mayor does not implicate the statutory provisions we rely upon to reach our conclusion. The Union argues that the City is not bound by the constraints of the Code. Its argument rests upon the decision reached in *City of Burbank v. Illinois State Labor Relations Board*, 185 Ill. App. 3d 997, 541 N.E.2d 1259 (1989). Our examination of the *City of Burbank* case leads us to conclude that it misstates the law.

In *City of Burbank*, a city attorney entered into a final settlement agreement with a union. See *City of Burbank*, 185 Ill. App. 3d at 1000, 541 N.E.2d at 1262. The city argued that it was not bound by the terms of the settlement agreement because the agreement was not approved by a majority vote of the city council as required by the Code. See *City of Burbank*, 185 Ill. App. 3d at 1004, 541 N.E.2d at 1264. The court held that a city may exercise its home rule authority by approving a settlement agreement without a majority vote of the city council making a prior appropriation for the contract. See *City of Burbank*, 185 Ill. App. 3d at 1005, 541 N.E.2d at 1265.

At first blush, the decision seems to square with the Union's position. Based upon *City of Burbank* and its interpretation of home rule powers, the Union argues that the City's former mayor had the necessary authority and did not need a majority vote of the city council in order to validly execute the addendum.

*City of Burbank* clearly holds that a home rule unit can exercise its authority without a majority vote of the city council. See *City of Burbank*, 185 Ill. App. 3d at 1005, 541 N.E.2d at 1265. Even if the reasoning that underlies its holding was valid, which we do not believe it is, we would not apply the holding to support what happened in our case.

We are presented with circumstances far removed from those addressed by the *City of Burbank* court. Members of Burbank's city council, its mayor, and its city administrator were all significantly involved in the negotiation of the settlement agreement. See *City of Burbank*, 185 Ill. App. 3d at 1000-01, 541 N.E.2d at 1261-62. More importantly, the city's knowledge of the agreement was evident from its compliance with the terms of the agreement. See *City of Burbank*, 185 Ill. App. 3d at 1004, 541 N.E.2d at 1264. Based upon these circumstances, the court felt that Burbank was bound by the agreement entered into on its behalf by the city attorney. See *City of Burbank*, 185 Ill. App. 3d at 1004, 541 N.E.2d at 1264.

■ In our case, the City had no idea that the former mayor had

entered into an addendum with the Union. No one other than the former mayor had any knowledge of the addendum's existence, much less its contents. Here, a defeated candidate for reelection, soon to leave the City's employ, attempted to expand the City's legal obligations and bind it to enlarged employee benefits far in excess of those negotiated and approved by the city council under the collective bargaining agreement. Unlike the situation in *City of Burbank*, the City of Belleville was kept in the dark. It was impossible for the City to ratify the addendum without knowledge of its existence. Moreover, once the city treasurer discovered the addendum, the Union was promptly notified that the City was not going to honor it. There was no authority to bind the City to the addendum, and the City did nothing to indicate its ratification.

The City points us to *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146, 657 N.E.2d 1201 (1995), and argues that the addendum is void because the City did not have an ordinance in place to authorize mayoral contracting without city council approval.

In *Nielsen-Massey Vanillas, Inc.*, the court confronted the holding in *City of Burbank*. The court observed:

"[W]e find that the court's analysis in reaching that conclusion was seriously flawed. In stating that home rule units are not bound by the requirements of the Illinois Municipal Code, [the court in *Burbank*] cited the Illinois Supreme Court cases of *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, [343 N.E.2d 919,] and *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, [309 N.E.2d 576]. However, it is clear from a reading of those cases that the supreme court actually held that a referendum passed or an ordinance enacted under the grant of power found in section 6 of the article VII of the Constitution of 1970 (Ill. Const. 1970, art. VII, § 6) supersedes a conflicting statute enacted prior to the effective date of the Constitution. (*Stryker*, 62 Ill. 2d at 527; *Clarke*, 57 Ill. 2d at 54.)" *Nielsen-Massey Vanillas, Inc.*, 276 Ill. App. 3d at 152, 657 N.E.2d at 1206.

The court in *Nielsen-Massey Vanillas, Inc.*, exposed the fallacy that underlies the decision in *City of Burbank*. For the reasons pointed out in *Nielsen-Massey Vanillas, Inc.*, we reject the *City of Burbank* holding.

To override the requirements of the Code, the city council would have had to specifically pass an ordinance rendering its sections ineffective. See *Nielsen-Massey Vanillas, Inc.*, 276 Ill. App. 3d at 152, 657 N.E.2d at 1206.

The city council did not vote to override the requirements of the

Code. The former mayor was powerless to void these requirements on his own initiative. He needed the approval of the city council. See *Nielsen-Massey Vanillas, Inc.*, 276 Ill. App. 3d at 152, 657 N.E.2d at 1206.

In sum, the former mayor did not have the authority to enter into the addendum with the Union, the City did not ratify the addendum, and no ordinance was passed that allowed the City to override the Code. For these reasons, the addendum was void, and summary judgment in the City's favor was called for.

Accordingly, we affirm the judgment of the St. Clair County circuit court.

Affirmed.

HOPKINS and RARICK, JJ., concur.