# Illinois Official Reports

## Appellate Court

---

### *Mosier v. Village of Holiday Hills*, 2019 IL App (2d) 180681

---

| | |
|---|---|
| Appellate Court Caption | GENE MOSIER and DONNA MOSIER, Plaintiffs-Appellants, v. THE VILLAGE OF HOLIDAY HILLS, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-18-0681 |
| Filed | May 3, 2019 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 16-LA-149; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas W. Gooch III and Sabina D. Walczyk, of The Gooch Firm, of Wauconda, for appellants.<br><br>James P. Kelly and Natalie L. Pesin, of Matuszewich & Kelly, LLP, of Crystal Lake, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiffs, Gene and Donna Mosier, appeal the dismissal with prejudice of their second amended complaint against defendant, the Village of Holiday Hills (Village). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     In April 2008, plaintiffs obtained a permit from the Village to build a "garage, patio, driveway" on their property, which is located within the Village. Plaintiffs erected a metal pole barn in conformance with the permit. Then, on March 6, 2013, McHenry County (County) sued plaintiffs for violation of a County ordinance, alleging that plaintiffs built the structure in a regulatory flood-prone area without a stormwater management permit issued by the County. The County prayed for a fine of $750 per day.

¶ 4     As a result of the County's action, on May 3, 2016, plaintiffs sued the Village for breach of contract and violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2016)). The gravamen of plaintiffs' suit was that the Village had a duty to disclose the County's permit requirement when plaintiffs applied for the building permit from the Village.

¶ 5     After the trial court involuntarily dismissed without prejudice that complaint and the first amended complaint, plaintiffs filed their two-count second amended complaint in which they alleged as follows. Count I, for breach of an oral contract, alleged that plaintiffs met with a Village building inspector, Ray DeBosz, who informed them that they could legally build a metal pole barn if they installed a "truss load." Plaintiffs agreed to DeBosz's terms, and the Village issued the permit on or about April 17, 2007.[1] At no time did DeBosz inform plaintiffs that they needed to make a separate application for a permit from the County. Plaintiffs completed construction of the pole barn only to learn that they were in violation of a County ordinance. Plaintiffs alleged that the Village had misrepresented the extent of its authority, because the necessary stormwater studies and site development work had to be approved by the County. As a result, plaintiffs spent thousands of dollars defending themselves against the County's lawsuit. Count II alleged a violation of the Act in that DeBosz misrepresented that plaintiffs needed only to include a "truss load" on the pole barn to obtain a valid permit. Plaintiffs alleged that DeBosz's statement was knowingly false and was made intentionally to induce plaintiffs to build the pole barn.

¶ 6     The Village moved to dismiss the second amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2016)). As to count I, the Village argued, *inter alia*, that DeBosz did not have authority to bind the Village to a contract. The Village incorporated its president's affidavit averring that the Village board has the sole authority to enter into contracts and never authorized DeBosz to enter into contracts on its behalf. The Village also maintained that the application for, and issuance of, a building permit does not constitute a contract. As to count II, the Village argued that the Act was inapplicable because plaintiffs were not consumers and the Village was not engaged in trade or commerce. Further, the Village claimed that the complaint was barred by a three-year statute of limitations.

---

[1]The date on the permit is April 19, 2008. The record does not disclose the source of this discrepancy.

¶ 7        On July 26, 2018, the court granted with prejudice the Village's motion to dismiss. With respect to count I, the court ruled that DeBosz did not have actual authority to enter into contracts, but "arguably" had apparent authority to bind the Village. Nevertheless, the court found that there was no consideration for the alleged oral agreement, as plaintiffs merely paid a fee for the building permit. Further, the court found that plaintiffs got what they paid for, namely the permit. With respect to count II, the court found that the Village did not commit a deceptive act, as it had no obligation to disclose the County's requirements. The court also found that the Act did not apply because there was no merchandise involved in the transaction. Plaintiffs filed a timely appeal.

¶ 8                                        II. ANALYSIS

¶ 9        Plaintiffs contend that the court erred in dismissing the second amended complaint. The Village brought the motion under section 2-619(a)(9) of the Code. Such a motion admits the legal sufficiency of the complaint but asserts that some "affirmative matter" defeats the claim. *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 14. An affirmative matter is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or of material fact contained in or inferred from the complaint. *Villanueva v. Toyota Motor Sales, U.S.A., Inc.*, 373 Ill. App. 3d 800, 802 (2007). We must determine whether there is a genuine issue of material fact and whether the defendant is entitled to judgment as a matter of law. *Villanueva*, 373 Ill. App. 3d at 802. We accept all well-pleaded facts as true, and we draw all reasonable inferences in favor of the plaintiff. *Villanueva*, 373 Ill. App. 3d at 802-03. We review *de novo* the trial court's dismissal of a complaint under section 2-619. *Norabuena*, 2017 IL App (1st) 162928, ¶ 14. Also, we may affirm a dismissal on any basis that is apparent from the record. *Norabuena*, 2017 IL App (1st) 162928, ¶ 14.

¶ 10                                A. Breach of Oral Contract

¶ 11        The first affirmative matter asserted by the Village was the Village president's affidavit averring that DeBosz had no authority to enter into contracts on behalf of the Village. The Village also posited lack of consideration as an affirmative matter. The Village asserted, and plaintiffs do not contest, that a Village ordinance required the issuance of a building permit for the erection, construction, or alteration of any structure. The Village argued that plaintiffs' application for the permit did not form a contract but was the fulfillment of a legal requirement.

¶ 12        The elements of a breach-of-contract action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 940 (2004). Plaintiffs argue that the Village, through DeBosz, offered to issue a permit to construct a pole barn on their property if they included a truss load. Implicit in that offer, plaintiffs argue, was the representation that "all [plaintiffs] needed to do to build" was to obtain a truss load. Plaintiffs assert that they accepted that offer and tendered consideration when they paid the application fee for the permit. Plaintiffs maintain that they performed under the contract by building a pole barn that included a truss load. They assert that the Village, through DeBosz, breached the contract by failing to inform them that they could not build the pole barn unless the County also approved the project. Plaintiffs assert that they were damaged by having to defend themselves against the County's lawsuit.

¶ 13    Plaintiffs argue that DeBosz had apparent authority to enter into the contract, because they "reasonably and detrimentally" relied upon his representations. Plaintiffs also cite the court's comment that DeBosz "arguably" had apparent authority to bind the Village. The Village argues that only "corporate authorities" can bind a municipality contractually and that a building inspector is not a corporate authority. As regards a village or incorporated town, "corporate authorities" means the president and trustees or a similar body. 65 ILCS 5/1-1-2(2)(b) (West 2016). The Village relies on *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561 (2000). However, that case dealt with provisions of the Municipal Code generally providing that no expense shall be incurred by any officer or department of a municipality unless an appropriation has been previously made concerning that expense. *City of Belleville*, 312 Ill. App. 3d at 563. Here, DeBosz's actions did not incur any expense on behalf of the Village. The Village's reliance on *McMahon v. City of Chicago*, 339 Ill. App. 3d 41 (2003), and *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, is similarly misplaced, as both of those cases involved a contract between a vendor and a municipality, which is not at issue here.

¶ 14    Plaintiffs and the Village both miss the mark debating DeBosz's authority under agency law. There is no question that he had authority to issue plaintiffs a building permit if they complied with the Village Code; however, that authority derived from the Village's police power. See *Hartman v. City of Chicago*, 282 Ill. 511, 513 (1918) (it is within the police power of a city to regulate the construction and use of buildings for the protection of the lives and safety of the citizens). Thus, the issuance of building permits is a governmental function designed to protect the public, and the charge for building permits is to offset expenses incurred by the municipality in promoting this public interest. *Hannon v. Counihan*, 54 Ill. App. 3d 509, 514-15 (1977). The issuance of a building permit cannot be a private matter between contracting parties, as a building permit cannot be granted in violation of a zoning ordinance. See *Ganley v. City of Chicago*, 18 Ill. App. 3d 248, 254 (1974). Principles of contract and agency law are inapt. In *Village of Schaumburg v. Kingsport Village, Inc.*, 106 Ill. App. 3d 1055, 1059 (1982), Schaumburg argued that the building permits that it issued to two developers, based on the developers' representations that their work on certain projects would be completed in accordance with all applicable building ordinances, allowed it to sue the developers for breach of contract when their work violated those ordinances. The trial court found that contract principles did not apply, and the appellate court agreed, reasoning that a building permit is "akin" to a license to do certain things within a municipality. *Village of Schaumburg*, 106 Ill. App. 3d at 1059. The appellate court stated that noncompliance with building permits results in monetary fines, making Schaumburg's breach-of-contract argument untenable. *Village of Schaumburg*, 106 Ill. App. 3d at 1059.

¶ 15    Plaintiffs' reliance on *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977), in support of their breach-of-contract argument[2] is misplaced. In *Steinberg*, the plaintiff received a catalog from the defendant describing the criteria upon which it evaluated student applications. *Steinberg*, 69 Ill. 2d at 327. The plaintiff applied for admission, paid the application fee, and was rejected. *Steinberg*, 69 Ill. 2d at 327. The plaintiff sued for breach of contract, alleging that the defendant failed to use the criteria established in the catalog in

_____

[2]Ironically, plaintiffs also distinguish *Steinberg* and argue that it is inapplicable to their consumer-fraud argument.

- 4 -

evaluating his application. *Steinberg*, 69 Ill. 2d at 327. The trial court dismissed the complaint, but the appellate court reversed, holding that it stated a cause of action for breach of contract. *Steinberg*, 69 Ill. 2d at 328. Our supreme court affirmed the appellate court, holding that the catalog constituted an invitation for an offer and that the plaintiff's application and tender of payment was an offer to apply according to the criteria established in the catalog. *Steinberg*, 69 Ill. 2d at 330, 343. The defendant's acceptance of the application and fee constituted acceptance of the offer. *Steinberg*, 69 Ill. 2d at 330. The court also held that the application fee was sufficient consideration to support the agreement. *Steinberg*, 69 Ill. 2d at 330. *Steinberg* involved a bargain between private parties rather than the fulfillment of a legal obligation and is thus distinguishable from our case.

¶ 16 While there is not any Illinois case on all fours, our research disclosed the Texas case of *Treviño & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39 (Tex. Ct. App. 1997). In *Treviño & Gonzalez*, the plaintiff sued R.F. Muller Company and the city of Laredo, Texas, to recover damages caused when the defendants installed a sewer line on the plaintiff's property pursuant to a building permit issued by the city. *Treviño & Gonzalez*, 949 S.W.2d at 40. The plaintiff argued that the building permit operated as a contract between the city and Muller to which the plaintiff was a third-party beneficiary. *Treviño & Gonzalez*, 949 S.W.2d at 40. The issue before the Court of Appeals of Texas was whether a building permit constitutes a contract between the issuing municipality and the permittee. *Treviño & Gonzalez*, 949 S.W.2d at 40. The court held that, when a building permit is issued, "none of the elements of a contract are present." *Treviño & Gonzalez*, 949 S.W.2d at 42. "A building permit is simply a revocable and alterable license authorizing construction." *Treviño & Gonzalez*, 949 S.W.2d at 42. Specifically, the court held that the "application for an issuance of a building permit does not constitute a voluntary agreement between the parties to enter into [a] binding contract." *Treviño & Gonzalez*, 949 S.W.2d at 42. This is so, the court reasoned, because (1) a municipality has the power to impose restrictions and to revoke such a permit pursuant to its police powers and (2) where a municipality is required to issue a building permit to a qualified applicant, no consideration has been exchanged for the permit. *Treviño & Gonzalez*, 949 S.W.2d at 42. The *Treviño & Gonzalez* case essentially fleshes out the court's reasoning in *Village of Schaumburg*, and we adopt both cases in deciding the issue at bar. Accordingly, we hold that a building permit issued by a municipality does not create a contract between the municipality and the permittee.

¶ 17 Furthermore, even if we were to apply contract law, DeBosz did not make an offer. Plaintiffs desired to erect a structure, and they were obligated by a Village ordinance to apply for a permit to do so. In that vein also, the application fee for the permit could not have constituted consideration for a contract. Performing an act that one is legally obligated to do is not consideration that could support a contract, because there is no detriment. *Mulvey v. Carl Sandburg High School*, 2016 IL App (1st) 151615, ¶ 35. Accordingly, we hold that the court properly dismissed with prejudice count I of the second amended complaint.

¶ 18 B. Violation of the Act

¶ 19 In count II of their second amended complaint, plaintiffs attempted to bring the transaction within the Act. The Act is a regulatory and remedial statute that is intended to protect consumers, borrowers, and business persons against fraud, unfair competition, and other unfair or deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). Unfair or deceptive practices include, but are not limited to, the use of any

deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission in the conduct of any trade or commerce. 815 ILCS 505/2 (West 2016); *Robinson*, 201 Ill. 2d at 417. The elements of a claim under the Act are (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Robinson*, 201 Ill. 2d at 417. Plaintiffs must show that the Village was engaged in trade or commerce and in unfair or deceptive acts or practices in the conduct of that trade or commerce. See *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 853 (1991). The term "trade or commerce" means the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f) (West 2016). Because we determine—without opining on any of the other elements—that the Village was not engaged in trade or commerce, count II of the second amended complaint fails.

¶ 20    Plaintiffs argue that the Village was engaged in trade or commerce because the issuing of building permits directly or indirectly affects the people of the state. Plaintiffs offer the example of a high rise that blocks the neighbors' views. At oral argument, plaintiffs also argued that the Village was engaged in trade or commerce because it offered its services in evaluating the permit application and granting it. "[T]rade or commerce" must involve "advertising, offering for sale, sale, or distribution of any services and any property." (Internal quotation marks omitted.) *Chirikos v. Yellow Cab Co.*, 87 Ill. App. 3d 569, 577-78 (1980). The Village did not advertise or offer anything for sale or sell anything. Specifically, the Village did not sell plaintiffs a building permit but merely collected a fee for its issuance pursuant to its power to regulate the construction and use of buildings. To the extent that the Village serviced plaintiff's request for a permit, such service consisted of carrying out the Village's regulatory and statutory functions.

¶ 21    The Act does not apply to a transaction involving a municipality's regulatory and legal powers. See *Chirikos*, 87 Ill. App. 3d at 578. In *Chirikos*, the plaintiff alleged that the City of Chicago's amendment of a taxicab ordinance to increase fares was induced by the defendant taxicab companies' violation of the Act where the defendants misrepresented data that led the city council to enact the fare increase. *Chirikos*, 87 Ill. App. 3d at 571. In affirming the trial court's dismissal of the complaint, the appellate court stated that, "[a]ssuming the defendants did deceptively mislead the city council *** , we cannot conclude this deception was practiced in connection with trade or commerce." *Chirikos*, 87 Ill. App. 3d at 578. The court noted that the Act is "completely" limited to the conduct of trade or commerce and then concluded that "discharge of a legislative function by an elected body is far afield from that category." *Chirikos*, 87 Ill. App. 3d at 577-78. In our case, it is undisputed that the Village enacted an ordinance that required compliance with the Village's building codes. To that end, the Village issued a permit. In our view, that transaction was as far afield from trade or commerce as that involved in *Chirikos*.

¶ 22    Plaintiffs next insist, without citing authority, that we must take as true their allegations that the Village violated the Act. While well-pleaded facts are taken as true (*Villanueva*, 373 Ill. App. 3d at 802-03), conclusions of law or fact unsupported by specific factual allegations

are not taken as true (*Lerma v. Rockford Blacktop Construction Co.*, 247 Ill. App. 3d 567, 571 (1993)).

¶ 23 Even were we to conclude that the Act applies, plaintiffs' complaint is barred by the statute of limitations. The Act provides that any action for damages must be commenced within three years after the cause of action accrued. 815 ILCS 505/10a(e) (West 2016); *Sommer v. United Savings Life Insurance Co.*, 128 Ill. App. 3d 808, 819 (1984). In their reply brief, plaintiffs assert that they did not learn of their injury until "around" September 23, 2015, making the filing of their suit on May 3, 2016, timely. The discovery rule applies to actions under the Act, meaning that the statute of limitations begins to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1021 (2007). Here, plaintiffs had to have been aware of their injury when the County sued them on March 6, 2013, informing them that they were in violation of a County ordinance, as that is when they began to incur damages. Plaintiffs conceded this point when they pleaded that their damages were those costs and fees incurred in defending themselves against the County's suit. Yet plaintiffs did not file suit until May 3, 2016, more than three years after they were aware of the alleged injury. Accordingly, we affirm the court's dismissal with prejudice of count II.

¶ 24 III. CONCLUSION

¶ 25 For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 26 Affirmed.