TECUMSEH INTERNATIONAL CORP., Plaintiff and Counterdefendant-Appellee, *v.* THE CITY OF SPRINGFIELD, Defendant and Counterplaintiff-Appellant.

Fourth District   No. 15196

Opinion filed April 5, 1979.—Rehearing denied May 8, 1979.

102

Walter Z. Rywak, Assistant Corporation Counsel, of Springfield, for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, and Conger & Elliott, P. C., of Carmi, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, City of Springfield, appeals from an order of the circuit court of Sangamon County which granted plaintiff's motion for summary judgment. In that order, the trial court found that no contract for the delivery of coal was formed between the plaintiff coal broker, Tecumseh International Corporation (Tecumseh) and the City of Springfield (City). Accordingly, judgment for Tecumseh was entered in the amount of $28,056.45 for coal accepted by and retained by the City. In addition, the court ordered the City to return Tecumseh's $5,000 deposit.

It is necessary to set forth the facts of this case in detail. Those facts reveal that on January 14, 1977, the City tendered to Tecumseh a proposed contract for the purchase of coal. The following day, Tecumseh's attorney contacted the City's attorney who had drafted the contract and stated that the City's proposed contract was not acceptable and that certain revisions would have to be made before Tecumseh would approve the form of the contract. The general manager of City Water, Light and Power of the City of Springfield (General Manager) was informed of the fact, but not the substance, of a phone conversation with Tecumseh's attorney.

On January 19, 1977, Tecumseh's president delivered to the General Manager a new proposed contract which was prepared by its attorney and which contained the requested revisions. That proposed contract was

signed by Tecumseh's authorized agent. The president pointed out the changes to the General Manager and told him that Tecumseh did not want the contract unless the changes were agreeable and included in the contract.

The four differences in the two proposed contracts are as follows:

(1) First paragraph under PRICE, first sentence: The City's tendered contract reads "F.O.B. carrier." Tecumseh's tendered contract reads "F.O.B. carrier at the mine."

(2) First paragraph under PRICE, second sentence: Tecumseh's tendered contract adds the word "if" preceding the clause "Seller agrees to deliver the coal to the Springfield, Illinois Power Plants * * *." The word "if" was not included in the City's tendered contract.

(3) Fourth paragraph under PRICE: The City's tendered contract reads "F.O.B. carrier." Tecumseh's tendered contract reads "F.O.B. carrier at the mine."

(4) Fourth paragraph under PRICE: The City's tendered contract ends with the phrase, "as above provided," which is not in Tecumseh's tendered contract.

Included in both proposed contracts was the provision that Tecumseh would deposit with the City a certificate of deposit in the amount of $5,000 pledged to the City as security for adequate and timely performance of the contract. In accordance with that provision, Tecumseh tendered to the City on January 19, 1977, a certificate of deposit for $5,000 assigned to the City. In return, Tecumseh received a receipt for the security deposit.

On January 25, 1977, the Springfield city council passed an ordinance approving the contract in the form initially tendered by the City without the revisions requested by Tecumseh. Apparently, the City ignored Tecumseh's proposed contract with the requested changes tendered on January 19, 1977.

A fuel buyer for the City subsequently contacted representatives of the coal mine supplying the coal for the contract and directed them to ship coal on behalf of Tecumseh to the City. During the first two weeks of February 1977, coal was shipped by the mine directly to the City.

On February 17, 1977, the City sent three copies of the contract prepared by it and approved by the Springfield city council along with a letter noting that a condition to the valid execution of the contract was a production of a binding contract between Tecumseh and the coal mine as evidence of Tecumseh's ability to supply coal to the City. The City's reference to a binding contract between Tecumseh and the coal mine was a term included in the proposed contracts of both parties.

Upon receiving these contracts, Tecumseh immediately responded

to a letter to the City dated February 18, 1977, and stated that the City's contracts were being returned since those contracts did not incorporate the revisions as set forth in Tecumseh's proposed contract. In a letter dated February 19, 1977, Tecumseh stated that it was withdrawing from participation on the contract since the City's version approved by the city council was unacceptable.

Both parties agree that 1,363.95 tons of coal were delivered to the City prior to February 19, 1977, and that $28,056.45 is a reasonable value for the coal.

In subsequent communications, the City stated its belief that a contract had been formed and the City noted that it would retain the $5,000 deposit since Tecumseh had repudiated the contract. In addition, the City stated that it would deduct its damages from the $28,056.45 due Tecumseh. Tecumseh thereafter filed this action for a declaratory judgment, for damages, and for the return of its $5,000 deposit.

On appeal, the City contends that the trial court erred in granting summary judgment for Tecumseh and in holding that no contract existed between the parties as a matter of law.

Both parties seem to agree that article 2 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 2—101 *et seq.*) is applicable in this case and that both parties are merchants as that term is defined therein. (Ill. Rev. Stat. 1977, ch. 26, par. 2—104.) In addition, both parties have characterized the City's initial contract of January 14, 1977, to be essentially a solicitation for an offer and Tecumseh's proposed contract of January 19, 1977, to be an offer. We find this characterization to be a correct interpretation of the facts of this case. Essentially then, the problem for resolution is whether the signed contract tendered by the City on February 17, 1977, constituted an acceptance of Tecumseh's offer of January 19, 1977, and thus created a binding contract between the parties.

In resolving this matter, we note that Tecumseh's offer of January 19, 1977, expressly limited acceptance by the City to the changes reflected in the offer. Section 2—207 of the Code has somewhat simplified offer and acceptance in contract law and the relevant portions of that section provide: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." Ill. Rev. Stat. 1977, ch. 26, par. 2—207(1).

Section 2—207 was apparently designed to alleviate the "battle of the forms" situation commonly occurring in business transactions. This section specifically rejects the common law mirror image rule of offer and

acceptance and thus converts the counteroffer into an acceptance under section 2—207(1). (See White & Summers, Uniform Commercial Code §1—2, at 23-24 (1972).) However, this section did not entirely supersede the common law of offer and acceptance in business transactions. In this regard a recent case has stated: "The general policy of section 2—207 is that the parties should be able to enforce their agreement, whatever it may be, despite discrepancies which may exist between an oral agreement and a written confirmation, and despite discrepancies between a written offer and a written acceptance, *if the acceptance can be granted without requiring either party to be bound to a material term to which it has not agreed.*" (Emphasis added.) (*Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 55, 349 N.E.2d 627, 634.) The court in *Wood* further observed that the offeror may retain control of the offer, as the common law provided, and allows the offeror a power equivalent to the offeree's power to expressly condition his acceptance.

It has also been observed with respect to contract formation: "The person who wanted the role of the offeror, or master of the terms of the contract, at common law can remain the master under the code if he so desires. *No one is compelled to do business on terms that he does not want.*" (Emphasis added.) Davenport, *How to Handle Sales of Goods: The Problem of Conflicting Purchase Orders and Acceptances and New Concepts in Contract Law*, 19 Bus. Law 75, 79-80 (1963).

■■ In comparing the differences in the proposed contracts, it is evident that the place of delivery of the coal constituted a material term and was so considered by both parties since each apparently insisted that their terms be incorporated into the final contract. In fact, Tecumseh expressly conditioned its offer upon the acceptance of the delivery terms in its proposed contract. Consequently, Tecumseh expressly retained control of its offer and was not compelled to do business on terms that it did not want. The contract tendered by the City on February 17, 1977, did not constitute an acceptance since its terms did not incorporate Tecumseh's changes. Thus, the City's tendered contract constituted a counteroffer rather than an acceptance. As noted previously, Tecumseh immediately rejected this counteroffer since the terms were not acceptable. It should be noted that the proposed contracts were not form contracts as envisioned by section 2—207 of the Code, but rather were contracts drafted by each party's attorneys. Thus, in view of the material nature of the delivery terms in Tecumseh's proposed contract, as well as the expressed condition of Tecumseh's offer, we conclude, as did the trial court, that no contract was formed.

■■ The City alternatively argues that a contract was formed by the conduct of both parties pursuant to sections 2—204(1) and 2—207(3) of

the Code. (Ill. Rev. Stat. 1977, ch. 26, pars. 2—204(1), 2—207(3).) The City contends that, since coal was actually delivered, this fact indicates the recognition of a contract by the parties. The City correctly argues that it can contract only by ordinance. It is therefore inconsistent to urge that the action of the General Manager effected a binding contract. The City's argument, however, ignores the uncontroverted fact that the City rather than Tecumseh requested the coal mine to begin delivery of the coal. After Tecumseh discovered that the City's contract, rather than its contract, had been approved by the Springfield city council, delivery of the coal ceased. The conduct recognizing the existence of a contract was exclusively that of the City, and thus section 2—207(3) is not applicable in the instant case since that section requires that conduct by *both* parties recognize the existence of a contract. Consequently, such unilateral conduct by the City was not sufficient to establish a contract for the sale of coal.

In summary, we conclude, after a review of the record, that there were no disputed questions of fact and that the trial court properly decided on a motion for summary judgment that no contract existed as a matter of law. Accordingly, we affirm the judgment of the circuit court of Sangamon County.

Affirmed.

TRAPP and GREEN, JJ., concur.