NIELSEN-MASSEY VANILLAS, INC., Plaintiff-Appellant, v. THE CITY OF WAUKEGAN, Defendant-Appellee.

Second District No. 2—95—0365

Opinion filed November 20, 1995.

Wayne M. Skwarek and T. Gregory Mieczynski, both of Skwarek & Anderson, of Oakbrook Terrace, for appellant.

Robert J. Masini, of Diver, Grach, Quade & Masini, of Waukegan, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Nielsen-Massey Vanillas, Inc., filed this lawsuit against the defendant, the City of Waukegan (the City), alleging that the City breached an agreement to loan the plaintiff $175,000. The City filed a motion to dismiss the plaintiff's second amended complaint arguing that any agreement to loan money to the plaintiff was null and void in the absence of an ordinance passed by the City council specifically appropriating the funds for the loan. In that regard, the City maintained that an ordinance authorizing the loan was a condition precedent to liability according to sections 8—1—7 and 3.1—40—40 of the Illinois Municipal Code (the Code) (65 ILCS 5/8—1—7, 3.1—40—40 (West 1994)). The trial court granted the City's motion and dismissed the plaintiff's second amended complaint with prejudice. The plaintiff appeals.

The record shows that the plaintiff was engaged in the business of manufacturing and distributing pure vanilla products. Initially, the plaintiff's manufacturing facilities were located in Lake Forest, Illinois. As a result of advertising by the City of Waukegan to attract new business into the community and relieve unemployment, the plaintiff met with City officials to discuss various economic incentives which the City was offering to induce business to relocate to Waukegan. In order to relocate, the plaintiff needed to acquire land,

construct a manufacturing facility, and buy equipment. At that time, the City had in effect an ordinance creating an economic development plan and an economic development commission. The ordinance provided that the commission shall have the following powers:

(1) To adopt and amend bylaws and regulations necessary for the commission to implement the plan.

(2) To solicit applications for participation in authorized plan financing programs.

(3) To review and evaluate applications for funds available under the plan and make recommendations to the mayor and the city council regarding their disposition.

(4) To adopt the necessary application forms for implementation of the plan.

The City's programs included offering financial assistance through industrial revenue bonds, assisting businesses with obtaining bonds through the Illinois Development Finance Authority, offering community development block grants through the United States Department of Housing and Urban Development (HUD), and issuing direct loans through the Waukegan Economic Development Commission.

On September 16, 1991, the City council passed resolution 91—R—93, which authorized the City to execute and deliver an agreement with the plaintiff to issue and sell revenue bonds in an amount not to exceed $3.5 million. The agreement provided that the bond proceeds would be used to finance a portion of the plaintiff's new manufacturing project. The agreement was eventually signed by both the plaintiff and the City. Resolution 91—R—93 further provided that the officers, employees, and designated agents of the City were authorized to take any further action necessary to carry out the intent and purposes of the agreement.

On November 1, 1991, Wes Dunski, the director of economic development for the City, sent the plaintiff a letter stating the following:

"This will confirm that the City of Waukegan will lend [the plaintiff] $175,000 at 3% to be amortized over a period of 10 years upon completion of the necessary applications."

Three days later, the City council passed resolution 91—R—119 which transferred the City's interest in the agreement to issue bonds to the Illinois Development Finance Authority (IDFA). The resolution noted that at the time it passed resolution 91—R—93 it was the intention of the City to issue revenue bonds to finance the plaintiff's project. However, the City was unable to obtain sufficient bond allocation to allow the City to issue the bonds, but since the IDFA had

some bond allocation available it would transfer its interest to the IDFA. The resolution concluded by stating that it ratified all the acts of the officers, employees, and agents of the City which were in conformity with the purposes and intent of the resolution.

Later that day, the City council passed resolution 91—R—120 which waived the City's right to disapprove the $2.6 million in revenue bonds which the IDFA intended to issue to the plaintiff.

On April 2, 1992, the plaintiff submitted the loan application Dunski requested in his November 1, 1991, letter. Thereafter, the City changed the loan application forms, and the plaintiff then submitted the new forms to the City's economic development commission. On September 25, 1992, the City's mayor, Haig Paravonian, sent the plaintiff's attorney a letter informing the plaintiff that Dunski's earlier letter committing to loan the plaintiff $175,000 was referring to the City's Community Development Block Grant (CDBG) program. The mayor noted that he had enclosed an application with his letter and that employment of low and moderate income residents was a crucial consideration under the program. Mayor Paravonian concluded by stating that he would do what was necessary to see that the plaintiff received $175,000 in loan interest funds. On October 13, 1992, the plaintiff's attorney sent the mayor a letter in which he recognized that the plaintiff would not qualify for the CDBG loan program.

On April 14, 1993, the City's attorney sent the plaintiff a letter stating that the plaintiff did not qualify for either the CDBG program or the economic development commission loan program. However, on June 4, 1993, the City's new mayor, William Durkin, met with the plaintiff's attorney and confirmed that the City would make the loan to the plaintiff.

When the City failed to lend the plaintiff any money by August 19, 1993, the plaintiff filed a lawsuit against the City seeking damages it allegedly incurred in connection with the City's refusal to make the loan. After the plaintiff's first amended complaint was struck without prejudice, the plaintiff filed a second amended complaint. That complaint alleged that various ordinances and commitments to loan money by City officials created an obligation on the part of the City to loan the plaintiff $175,000. In response, the City filed a motion to dismiss the plaintiff's complaint in a combined section 2—615 and 2—619 (735 ILCS 5/2—615, 2—619 (West 1994)) motion to dismiss arguing that (1) the City was not liable to make the loan because under sections 3—11—17 (now section 3.1—40—40) and 8—1—7 of the Illinois Municipal Code a City can only spend or appropriate its money pursuant to an ordinance passed by the City

council; and (2) the plaintiff did not qualify for any loan program offered by the City.

The City attached the affidavits of Wes Dunski, the former director of economic development for the City, and Jennifer Yonan, the current director of economic development for the City. In his affidavit, Dunski stated that he was employed as director of economic development for the City from 1976 until May 1993. He further stated that during his employment with the City anyone seeking a loan had to submit an application that had to be qualified and approved under the respective qualifications of the program before any loan would be made. He also noted that he did not have authority from the City council to commit the City to make a loan outside of an existing program.

In her affidavit, Yonan stated that she was currently the director of economic development for the City. She had been hired in 1990 as director of marketing and public relations. In September 1992, she took an additional position as coordinator of the City's economic development commission. She noted that in 1992 the City had two programs available through which it could provide financial incentives to qualified businesses that relocated to the City. These programs were the Community Development Block Grant Program (the CDBG program) and the Waukegan Economic Commission Program, known as the Waukegan plan. She noted that as part of her employment with the City in September 1992 she received the plaintiff's loan applications submitted in connection with the Waukegan plan program, and she concluded that the plaintiff was not qualified to receive a loan under that program. She further noted that the plaintiff was not qualified to receive a loan pursuant to the CDBG program.

After a hearing on the City's motion to dismiss, the trial court dismissed the plaintiff's second amended complaint with prejudice. The plaintiff appeals.

On appeal, the plaintiff argues that (1) as a home rule unit the City was not bound by section 8—1—7 of the Code, which requires expenditures of a municipality to be approved by the City council; (2) even if section 8—1—7 were applicable, the plaintiff's cause of action fell under an exception to the general rule prohibiting contractual liability given the circumstances surrounding the passage of the various ordinances and the commitments made by certain City officials; (3) a factual question was created by the City's admission that it had two loan programs available whereby Dunski, as director of economic development, had the authority to loan money to qualified applicants; and (4) the City should be estopped from denying that it had entered a binding agreement to lend money to plaintiff.

Initially, we note that the order the plaintiff appeals from does not specify whether the dismissal of the complaint was pursuant to section 2—615 or section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1994)). However, we may affirm a correct decision for any reason appearing in the record regardless of the basis relied on by the trial court. (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 873.) A section 2—619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter which avoids or defeats the claim. (*T&S Signs, Inc. v. Village of Wadsworth* (1994), 261 Ill. App. 3d 1080, 1083.) A section 2—619 motion to dismiss admits all well-pleaded facts. (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 874.) The purpose of a section 2—619 motion to dismiss is to provide a mechanism to dispose of issues of law and easily proved issues of fact, and the cause of action should not be dismissed on the pleadings unless it is clearly apparent that no set of facts can be proved which will entitle a plaintiff to recover. *Geick*, 236 Ill. App. 3d at 874.

Turning to the propriety of the trial court's dismissal of the plaintiff's second amended complaint, we note that the plaintiff sought to recover damages as a result of a breach of an agreement by the City to loan the plaintiff $175,000. In support of its position that it was not liable to make the loan, the City relies on section 8—1—7(a) of the Illinois Municipal Code, which provides in relevant part:

> "Except as provided otherwise in this Section, no contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." (65 ILCS 5/8—1—7(a) (West 1994).)

The City also relies on section 3.1—40—40 of the Code, which provides in part that the passage of any ordinance or resolution to create liability against a city for the expenditures or appropriation of its money requires the approval of a majority of all members holding office on the city council. 65 ILCS 5/3.1—40—40 (West 1994).

The plaintiff contends that the City cannot rely on section 8—1—7 to defeat its cause of action because the City was not bound by the constraints of section 8—1—7 of the Code. Relying on *City of Burbank v. Illinois State Labor Relations Board* (1989), 185 Ill. App.

3d 997, the plaintiff contends that the City, as a home rule unit of government, could supersede any provision of the Code including section 8—1—7, which was enacted prior to the effective date of the 1970 Illinois Constitution.

■ We disagree. In *City of Burbank v. Illinois State Labor Relations Board*, a union sued the city for unfair labor practices. There, the Appellate Court, First District, held that a city may exercise its home rule authority by approving a settlement agreement without a majority vote of the city council making a prior appropriation for the contract. (*City of Burbank*, 185 Ill. App. 3d at 1005.) However, we find that the court's analysis in reaching that conclusion was seriously flawed. In stating that home rule units are not bound by the requirements of the Illinois Municipal Code, it cited the Illinois Supreme Court cases of *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, and *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50. However, it is clear from a reading of those cases that the supreme court actually held that a referendum passed or an ordinance enacted under the grant of power found in section 6 of the article VII of the Constitution of 1970 (Ill. Const. 1970, art. VII, § 6) supersedes a conflicting statute enacted prior to the effective date of the Constitution. (*Stryker*, 62 Ill. 2d at 527; *Clarke*, 57 Ill. 2d at 54.) In other words, to override the requirements of section 8—1—7 in the present case, the city council would have had to pass specifically an ordinance rendering section 8—1—7 ineffective. In the instant case, the City council never voted on a measure to override the requirements of section 8—1—7. The City's mayor and economic director cannot decide to void section 8—1—7 on their own initiative in the absence of approval by the City council.

Further support for our conclusion that section 8—1—7 of the Code was not superseded in this case is found in *Klekamp v. City of Burbank* (1994), 266 Ill. App. 3d 81. In *Klekamp*, which was decided five years after *City of Burbank v. Illinois State Labor Relations Board* and involved the same municipality, the court did not find that section 8—1—7 was superseded even though the *Klekamp* court was aware of the prior *City of Burbank* case because it cited it in the opinion. Instead, the *Klekamp* court held that section 8—1—7 of the Code requires the passage of an ordinance to spend or appropriate money on behalf of a city.

Next, the plaintiff argues that even if section 8—1—7 is applicable, its cause of action nonetheless fits within the confines of that statute or the established exceptions to the general rule stated by section 8—1—7. We disagree.

Section 8—1—7 has been consistently construed to render null

and void any contract made by a city without a full prior appropriation by the city council. (*Klekamp*, 266 Ill. App. 3d at 84; *Lindahl v. City of Des Plaines* (1991), 210 Ill. App. 3d 281, 297; *Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 290.) Furthermore, a party contracting with a city is presumed to know whether the city is prohibited from making a contract, and a contract made in violation of section 8—1—7 is void *ab initio* and cannot be enforced by estoppel as ratification. (*Ligenza*, 133 Ill. App. 3d at 290-91.) In that regard, it has been held that assurances by city officials, including the mayor, cannot bind the municipality in the absence of approval by a majority vote of the city council. *Guerine v. City of Northlake* (1971), 1 Ill. App. 3d 603, 606-07; *Greene v. City of Danville* (1953), 350 Ill. App. 440, 444.

However, it has also been held that section 8—1—7 is not violated in situations where payment under a contract is to be made from a special fund or a special assessment and not from a city's general corporate funds. (*DeLeuw, Cather & Co. v. City of Joliet* (1945), 327 Ill. App. 453, 464 (prior appropriation not required to bind city under a contract for engineering services entered in connection with a public water works project which was to be funded from a Federal loan and grant and not from the general funds of the city); *Simpson v. City of Highwood* (1939), 372 Ill. 212, 219-20 (prior appropriation not required for construction and engineering expenses incurred in connection with water supply facilities to be paid for from a special fund and not from general fund).

The plaintiff points to language in resolution 91—R—93 authorizing agents of the City to take any further action to carry out the intent and purpose of the memorandum of agreement. It claims that that language shows that the City council placed authority in certain City officials to loan the plaintiff money not payable out of the City's general funds. The plaintiff further maintains that the City council ratified Dunski's actions in promising to loan money when the City council passed resolution 93—R—119.

■ We find the plaintiff's contentions unpersuasive. It is clear from the record that the resolutions and the memorandum of agreement do not raise a factual question regarding a commitment by the City to loan the plaintiff money. A review of those documents fails to demonstrate any commitment by the City to make a loan. Rather, it is clear that the revenue bond process was not tied to the representations by City officials that it would loan the plaintiff $175,000. Resolution 91—R—93 simply authorized the City to make an agreement with the plaintiff to issue revenue bonds "not to exceed $3,500,000." Language in the resolution authorized agents to take further action

necessary to carry out the purposes of the agreement. Contrary to the plaintiff's assertions, we find that this language related to the bonding process and cannot be deemed to confer authority to loan money aside from the revenue bond process. Similarly, resolution 93—R—119 only ratified the City's actions relating to the transfer of its interest in the memorandum of agreement to the IDFA. Nothing in that document can be construed as ratifying Dunski's commitment to loan money.

The plaintiff next argues that the City began the creation of a special fund and then changed its mind about proceeding with the project for which the special fund was created. The plaintiff's argument must be rejected. Nothing in the pleadings or record suggests that the City changed its mind about proceeding with a project for which a special fund was created. *Heritage Commons Partners v. Village of Summit* (7th Cir. 1991), 935 F.2d 1489, cited by the plaintiff, is not on point. There, the village specifically passed an ordinance authorizing submission by the village for a Federal grant for the development of property. Thereafter, the village refused the grant even though the United States Department of Housing and Urban Development had approved the grant. Unlike the instant case, in *Heritage Commons Partners* there was no issue regarding whether the plaintiff was qualified to receive the loan based on the program qualifications. The court in *Heritage Commons Partners* found that a binding contract existed because the parties mutually intended to be bound as evidenced in the various resolutions passed by the village board.

The plaintiff points out that the CDBG program and the Waukegan plan loan program were special funds from which money could be passed out without a prior appropriation. The plaintiff claims that a question of fact existed as to whether Director Dunski could and did commit the City to loan money from those special funds.

We disagree with the plaintiff's contention that a question of fact existed as to this issue. Dunski stated in his affidavit that anyone securing a loan from the City had to submit an application and had to be qualified and approved under the specific program's qualifications before any money could be paid out. He further noted that he was not given authority by the City council to grant loans or commit the City to making a loan outside of any existing program. Yonan stated in her affidavit that during 1992 the City had two loan programs available through which it could provide financial incentives to qualified businesses that relocated to Waukegan. She further stated that the plaintiff did not qualify for either program. She explained that in connection with her employment for the City she

reviewed the plaintiff's application for a loan under the Waukegan plan program and determined that the plaintiff had not qualified for that program. She also noted that the plaintiff did not qualify under the CDBG program and that the plaintiff's attorney admitted that the plaintiff did not qualify for the program in a letter sent to Mayor Paravonian in October 1992.

■ When a defendant submits an affidavit in support of a motion to dismiss which controverts a well-pleaded fact in the complaint and the plaintiff fails to file a counteraffidavit, the facts set forth in the affidavit are accepted as true despite any contrary assertions in the plaintiff's complaint. (*Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 925; *Wood v. Village of Grayslake* (1992), 229 Ill. App. 3d 343, 349-50.) The City's affidavits were unrebutted by the plaintiff. Accordingly, we find that there was no issue of fact about whether the plaintiff qualified for an existing loan program or whether City officials had the authority to grant loans for which the plaintiff was not qualified.

■ For the first time on appeal the plaintiff attacks the City's affidavits as being conclusory and not based on the personal knowledge of the affiants in violation of Supreme Court Rule 191 (145 Ill. 2d R. 191). We find, however, that the plaintiff waived its objections to the sufficiency of the City's affidavits by failing to object or to file a motion to strike the affidavit in the trial court. See *Stone v. McCarthy* (1990), 206 Ill. App. 3d 893, 899-900; *Dolce v. Dolce* (1982), 108 Ill. App. 3d 817, 820; *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 321; *Classen v. Heil* (1947), 330 Ill. App. 433, 437.

Lastly, the plaintiff maintains that the City benefitted from the plaintiff's relocation and that the plaintiff detrimentally relied on the commitment by City officials to lend money to the plaintiff if it would relocate. Therefore, the plaintiff argues the City should be estopped to deny the loan.

While the doctrine of estoppel has been applied to municipal corporations, a finding of estoppel against a public body is not favored. (*Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, 938.) Equitable estoppel should not be invoked against a public entity except under compelling circumstances, where to do so would not defeat the operation of public policy. *Bank of Pawnee*, 166 Ill. App. 3d at 939.

The doctrine of estoppel may be invoked against a municipality if two prerequisites are met: (1) an affirmative act on the part of the municipality; and (2) the inducement of substantial reliance by the affirmative act. (*Lindahl v. City of Des Plaines* (1991), 210 Ill. App. 3d 281, 295.) However, the affirmative act which induces the plaintiff's reliance must be an act of the municipality itself, such as legislation,

rather than the unauthorized acts of a ministerial officer. (*Bank of Pawnee*, 166 Ill. App. 3d at 939.) Furthermore, a city cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official or made in derogation of statute. *Lindahl*, 210 Ill. App. 3d at 295.

■ In the instant case, the City's affidavits showed that Dunski and Yonan did not have the authority to grant loans outside of existing programs and the plaintiff did not qualify for the loans that did exist. Thus, the actions purporting to commit the City to make the loan in question constituted unauthorized ministerial acts which did not invoke the doctrine of estoppel against the City. Furthermore, we do not find "compelling circumstances" which would be required to invoke the doctrine against a public body. In that regard, it is undisputed that the plaintiff was asked to fill out an application in connection with the loan. Although it was never specifically stated, it can be reasonably inferred that if the plaintiff was required to fill out an application it also had to qualify for the loan based on the information supplied in the application. Under the circumstances, we hold that the City was not estopped to deny an enforceable contract to loan the plaintiff money.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County which dismissed plaintiff's second amended complaint with prejudice.

Affirmed.

McLAREN, P.J., and GEIGER, J., concur.